# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

UNITED STATES OF AMERICA for the use and
benefit of PROFESSIONAL SERVICE
INDUSTRIES, INC., a Delaware corporation, and
PROFESSIONAL SERVICE INDUSTRIES, INC.,

    Plaintiffs,                                          CASE NO.:

vs.

HENSEL PHELPS CONSTRUCITON,
a Delaware general partnership,
and TRAVELERS CASUALTY AND SURETY
COMPANY, a Connecticut corporation,

    Defendants.
_____/

## COMPLAINT

Plaintiffs, UNITED STATES OF AMERICA ("**USA**"), for the use and benefit of Professional Services Industries, Inc., a Delaware Corporation, and PROFESSIONAL SERVICES INDUSTRIES, INC. ("**PSI**"), hereby sue Defendants, HENSEL PHELPS CONSTRUCTION, a Delaware general partnership ("**HP**"), and TRAVELERS CASUALTY AND SURETY COMPANY, a Connecticut corporation ("**Travelers**"), and allege as follows:

### PARTIES, JURISDICTION AND VENUE

1. This action arises under the Miller Act, Title 40 U.S.C. § 3131, *et. seq.* ("**Miller Act**").

2. Plaintiff, USA, is named as a party Plaintiff for the use and benefit of PSI pursuant to the provisions of the Miller Act.

3. Plaintiff, PSI, is a Delaware corporation authorized to conduct business in the State of Florida and at all times material hereto transacted business in Hillsborough County, Florida. PSI's principal place of business is located in Illinois.

4. Defendant, HP, is a Delaware general partnership authorized to conduct business in Florida and, at all times material hereto, transacted business in Hillsborough County, Florida. HP's principal address is located in Greeley, Colorado.

5. Defendant, Travelers, is a surety insurer incorporated in Connecticut and whose principal place of business is in Connecticut.

6. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, the Miller Act and 28 U.S.C. § 1367(a).

7. Venue is proper pursuant to 40 U.S.C. § 3133(b)(3) because the Miller Act requires suit to be brought in the nearest district court to the location of the project at issue, and pursuant 28 U.S.C. § 1391 because the real property that was improved is located in Hillsborough County, Florida.

**GENERAL ALLEGATIONS**

8. On or about September 28, 2017, the Army Corps of Engineers ("**COE**"), on behalf of the United States of America, entered into a written contract with HP, as the prime contractor (the "**Prime Contract**"), for the construction of an Army Reserve Center/Aviation Support Facility, MacDill Air Force Base, Florida (the "**Project**").

2

9. On October 2, 2017, Travelers, together with HP as principal, furnished the Payment Bond attached hereto as **Exhibit A** (the "**Bond**") pursuant to 40 U.S.C. § 3131 to ensure prompt payment to subcontractors furnishing labor, material or both in the prosecution of work on the Project.

10. Travelers and HP are co-obligees on the Bond.

11. PSI and HP entered into a Subcontract for Technical Services (Subcontract No. 8017165-0200500) dated January 12, 2018 (the "**PSI Agreement**") related to the construction of the Project. A true and correct copy of the PSI Agreement is attached hereto as **Exhibit B**.

12. Pursuant to the PSI Agreement, PSI was to furnish all materials, equipment, tools and labor required to fully perform all materials testing and special inspections on the Project including concrete paving testing services.

13. HP entered into a subcontract with Ajax Paving Industries of Florida LLC ("**Ajax**") to place concrete pavement on the Project airfield.

14. As Ajax placed pavement on the Project, PSI would follow behind and perform its concrete sampling and pavement testing services.

15. As a result, PSI could only provide its sampling and testing services as fast as Ajax could perform the paving.

16. Pursuant to the PSI Agreement, PSI was required to follow the Project CPM or Baseline Schedule (the "**Schedule**").

17. The original Schedule set 50 working days for Ajax's airfield paving work.

18. Ajax and HP agreed to accelerate the airfield paving work by shortening the paving duration to approximately 20 major placement days, which resulted in an increased daily production by Ajax.

19. HP communicated the reduced airfield paving Schedule to PSI so that PSI could coordinate its testing and staffing. As a result, PSI had to mobilize additional manpower to achieve the testing pace required by the Project testing specifications to match the pace of the pour schedule.

20. During the course of the airfield paving, Ajax fell behind the compressed Schedule.

21. The concrete paving operations spanned from July 2020 through December 2020 resulting in a total of $525,977.00 in additional concrete paving testing services performed by PSI.

22. Ajax's acceleration of the airfield paving Schedule and failure to perform its work in accordance with the accelerated Schedule caused PSI to incur additional testing and costs beyond PSI's original scope of work.

23. PSI timely requested additional compensation for the costs caused by Ajax's delayed paving services. On February 5, 2021, PSI submitted Change Order Request / Back Charge #13 Rev. 5, which is attached hereto as **Exhibit C**.

24. To date, HP has refused to make payment to PSI.

25. In a letter dated February 15, 2021, HP admitted that the "overall duration of the airfield related work extended beyond the original duration included in the project schedule and that [HP] would support PSI's costs for the

extended duration as a backcharge to the appropriate subcontractor(s)." A true and correct copy of the February 15, 2021 letter is attached hereto as **Exhibit D**.

26. PSI completed and delivered to the Project all of the services to be provided by PSI. A true and correct copies of the Invoices due are attached hereto as **Exhibit E**.

27. PSI is a proper claimant on the Bond as PSI supplied labor and services on the Project.

28. PSI has complied with all conditions precedent to filing this cause of action or said conditions precedent have been waived or otherwise excused.

### COUNT I – NON-PAYMENT UNDER MILLER ACT BOND
### (HP AND TRAVELERS)

29. Plaintiff realleges and reincorporates its allegations in Paragraphs 1 through 27 above as if fully set forth herein.

30. As a subcontractor in direct privity with HP, PSI is a proper claimant under the Bond.

31. PSI made demands for payment for additional testing services on HP and Travelers.

32. HP and Travelers have failed and refused to make payment to PSI as required by the Bond.

33. PSI has substantially and satisfactorily performed all of the work required under the PSI Agreement and the work has been accepted, without objection.

34. PSI is due, owing and unpaid on the project the sum of $525,977.00, together with interest and costs.

35. This lawsuit has been timely filed within one year of the last furnishing of labor and services on the Project.

36. PSI is entitled to recover the full amount due and owing.

WHEREFORE, Plaintiff, United States of America f/u/b/o Professional Service Industries, Inc., requests that this Honorable Court enter a judgment, jointly and severally, against Defendant, Hensel Phelps Construction and Travelers Casualty and Surety Company for damages in the amount of $525,977.00, together with interest, costs and such further and other relief as this Court deems just and proper.

## COUNT II– BREACH OF CONTRACT
## (HP)

37. Plaintiff realleges and reincorporates its allegations in Paragraphs 1 through 27 above as if fully set forth herein.

38. HP has breached the PSI Agreement by failing and refusing to pay PSI for labor and services provided to the Project pursuant to the PSI Agreement and specific direction from HP.

39. As a direct and proximate cause of HP's breach, PSI has been damaged.

40. Interest is accruing on this amount from the dates on which PSI billed HP for the labor and services that PSI supplied under the PSI Agreement.

41. PSI is due, owing and unpaid on the project the sum of $525,977.00, together with interest and costs.

WHEREFORE, Professional Service Industries, Inc. requests that this Honorable Court enter a judgment against Defendant, Hensel Phelps Construction, for damages in the amount of $525,977.00, together with interest, costs and such further and other relief as this Court deems just and proper.

DATED: April 1, 2022

            **SHUTTS & BOWEN LLP**
*Attorneys for Professional Service Industries, Inc.*
4301 West Boy Scout Blvd., Suite 300
Tampa, FL  33607
Telephone: (813) 229-8900
Facsimile:  (813) 229-8901

By: */s/ Amanda B. Buffinton*
   Amanda B. Buffinton, Esq.
   Lead Counsel
   Florida Bar No.: 0569054
   ABuffinton@shutts.com
   KAllen@shutts.com
   Meredith A. Freeman, Esq.
   Florida Bar No.: 771651
   Mfreeman@shutts.com
   KAllen@shutts.com